RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BRENDON TAYLOR,

*Plaintiff,*

HOLLY HOOVEN,

*Plaintiff-Appellant,*

       No. 26-3005

*v.*

JESSE LEE ANTHONY HOOVEN, individually and acting under color of State law; CITY OF CINCINNATI, OHIO; MADISON M. PAUL, individually and acting under color of State law; HAMILTON COUNTY BOARD OF COUNTY COMMISSIONERS; HAMILTON COUNTY DEPARTMENT OF JOB & FAMILY SERVICES,

*Defendants-Appellees.*

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:24-cv-00204—Susan J. Dlott, District Judge.

Decided and Filed: July 27, 2026

Before: SILER, DAVIS, and RITZ, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Justin M. Whittaker, WHITTAKER LAW, LLC, Cincinnati, Ohio, for Appellant. Christopher Wiest, CHRIS WIEST, ATTORNEY AT LAW, PLLC, Covington, Kentucky, Zachary Gottesman, GOTTESMAN & ASSOCIATES, LLC, Cincinnati, Ohio, for Appellee Jesse Lee Anthony Hooven. Shuva J. Paul, Katherine C. Baron, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellee City of Cincinnati. Matthew Miller-Novak, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees Hamilton County Board of County Commissioners and Hamilton County Department of Job and Family Services.

---

**OPINION**

---

RITZ, Circuit Judge.  Holly Hooven and Jesse Hooven have been embroiled in divorce and custody litigation in Ohio state court for many years.  Their latest dispute spilled over into a federal court proceeding that Holly brought against Jesse and various municipal defendants.  Citing the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971), the district court declined to grant Holly injunctive relief, because to grant Holly the relief she sought would have interfered with a pending state court proceeding.  Holly appealed that decision, along with an earlier order dismissing her claim against the City of Cincinnati under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  For the following reasons, the district court correctly abstained from the injunctive-relief issue, and the dismissal of Holly's *Monell* claim was not a final order over which we have appellate jurisdiction.  We thus affirm in part and dismiss in part.

I.

Jesse Hooven and Holly Hooven are ex-spouses who are co-parenting two minor children.  This case arises out of their contentious relationship and litigation over child custody arrangements in the domestic relations court of Hamilton County, Ohio.

Jesse and Holly divorced in 2019, and they entered into a shared-parenting decree.  In March 2023, Jesse, who is a police officer, met Madison Paul, an employee of the Hamilton County Department of Jobs and Family Services (JFS).  Holly claims that Jesse asked Paul to use Ohio's automated child welfare information system to look up damaging information about Brendon Taylor, Holly's fiancé.  Paul allegedly did so, and Jesse sent Holly the information.  In April 2023, Taylor filed complaints about Paul and Jesse with JFS and the City of Cincinnati (respectively), which referred the matter to the police department for investigation.

A.    Contempt-order-related filings

Holly—with Taylor as a co-plaintiff—filed this federal lawsuit on April 15, 2024.  The lawsuit asserted claims against Jesse and Paul arising under 42 U.S.C. §§ 1983 and 1985; claims

against the City of Cincinnati, Hamilton County, and JFS arising under *Monell*; and various state causes of action against Jesse and Paul.

Holly made several attempts to serve Jesse with the federal court complaint. On May 8, 2024, Jesse filed a motion in the state domestic relations court for an order prohibiting Holly "from, directly or indirectly, disclosing outside of this case [Jesse's] residential address." RE 57-1, Mot., PageID 448. Jesse explained that, as a police officer, he wanted to keep his address private. *Id.* The parties submitted a proposed order to the court regarding non-disclosure of Jesse's address on June 26, 2024. The next day, Holly's lawyer made another attempt to have a federal summons issued to Jesse's home address. So, the day after that, Jesse filed another motion in the state domestic relations court asking the court to hold Holly in contempt for disclosing his home address.

On July 8, 2024, the state court entered the parties' agreed-upon order. The order, among other things, required that Holly "not disclose, or cause others to disclose, any present or future residential address of . . . Jesse . . . to any third party in any communication whatsoever, including but not limited to oral communications, social media postings, email and other correspondence." RE 32-4, Agreed Order, PageID 223; RE 108, Oct. 29, 2025 Ohio Domestic Relations Court Order, PageID 971-72. Nevertheless, on July 15, 2024, Holly's attorney in the federal court case filed a document with the district court that contained Jesse's home address. Two days later, Jesse filed another motion for contempt against Holly in state court for violating the parties' agreed-upon order. RE 108, Oct. 29, 2025 Ohio Domestic Relations Court Order, PageID 982; Dkt., Case No. DR1801899, Hamilton County Clerk of Courts, *available at* https://perma.cc/M2K4-6665 (last visited July 22, 2026).[1]

In an order entered on October 29, 2025, the state domestic relations court held Holly in contempt for her attorney's disclosure of Jesse's home address in the federal case. The court fined Holly $250, to be paid to Jesse by December 31, 2025, and required that she "request that [Jesse's] address be redacted from the federal court filings" within thirty days, or else the court

---

[1]Because the records from the state domestic relations court and the Ohio Court of Appeals "are available online to members of the public[,] . . . this court may take judicial notice of them." *Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004).

would "likely find her in contempt for each separate occurrence of [Jesse's] address in the federal case." RE 108, Oct. 29, 2025 Ohio Domestic Relations Court Order, PageID 982, 984. In the same order, the domestic relations court granted a motion that Jesse had filed on June 12, 2024, to terminate the parties' shared parenting plan and grant Jesse custody of the children. On November 26, 2025, Holly filed with the Ohio Court of Appeals a notice of appeal of the domestic relations court's October 29, 2025 order.

On December 1, 2025, Holly moved in federal court for a temporary restraining order (TRO) and a preliminary injunction. She asked the district court to "stay[] enforcement of the October 29, 2025, Judge's [d]ecision entered by" the Ohio domestic relations court. RE 109, Mot. for TRO and Prelim. Inj., PageID 989. Her theory was that the order "violate[d] [her] absolute First Amendment right to seek redress in federal court for her" Section 1983 claims by holding her "in contempt for asking the Clerk of [the U.S. District Court for the Southern District of Ohio] to issue a Summons to [Jesse] at his residence." *Id.* at PageID 989, 992. On the same day, before the defendants could file a response to Holly's motion, the district court entered an order denying the TRO and preliminary injunction. The district court ruled that it would abstain from entering a TRO or injunction under *Younger*, in order to avoid interfering with the pending state domestic relations litigation.

On December 17, 2025, the Ohio Court of Appeals ordered a limited remand of Holly's appeal to the state domestic relations court. Holly filed a notice of voluntary dismissal of her state court appeal on January 5, 2026, and the appellate court dismissed the case based on the agreement of the parties on January 9, 2026. The state domestic relations case appears to remain open; the most recent entries on its docket relate to a recently filed motion for contempt, attorney's fees, and supervised parenting time by Jesse. *See* Dkt., Case No. DR1801899, Hamilton County Clerk of Courts, *available at* https://perma.cc/M2K4-6665 (last visited July 22, 2026).

On December 31, 2025, Holly timely filed a notice of interlocutory appeal of the federal court's abstention order.

B.      *Monell*-claim-related filings

Meanwhile, Holly and Taylor amended their federal court complaint on August 30, 2024. In September 2024, Jesse and the City of Cincinnati both moved to dismiss the complaint. On January 3, 2025, the district court granted in part and denied in part the motions, in relevant part dismissing the *Monell* claims asserted against the City.

Holly and Taylor moved for reconsideration, or, alternatively, for the district court to certify its January 3, 2025, order as "final" under Rule 54(b) of the Federal Rules of Civil Procedure. *See generally* RE 84, Joint and Consolidated Mots. In an order dated April 15, 2025, the court reaffirmed its dismissal of the *Monell* claims against the City. In the same order, however, the district court denied Holly and Taylor's request that the court certify its dismissal order as "final" pursuant to Rule 54(b) so that they could file an appeal. RE 95, Order, PageID 882-83. Later, on September 30, 2025, the court entered a corrected version of its April 15 order on Holly and Taylor's motions for reconsideration. In the corrected order, the district court reiterated that the *Monell* claims against the City were dismissed and again declined to certify the dismissal order as "final." RE 103, Corrected Order, PageID 938-40.

Holly and Taylor's Section 1983 claims and several state law claims against Jesse and Paul, as well as Holly and Taylor's *Monell* claim against the County and JFS, continue. The district court has ordered discovery during the pendency of this appeal.

II.

We have before us Holly's appeals from the district court's order abstaining from ruling on her motion for injunctive relief and from its corrected order on Holly's motion for reconsideration, in which the court reiterated its dismissal of Holly's *Monell* claim against the City. For the following reasons, we affirm the district court's ruling on the injunctive-relief issue and dismiss Holly's appeal of the *Monell* issue.

A.      Mootness

As an initial matter, Jesse argues that the preliminary injunction issue is moot because Holly has paid the $250 contempt fine and complied with the order to seal Jesse's address on the

federal court docket. "We address mootness before we address *Younger* abstention because mootness is a jurisdictional issue." *Aaron v. O'Connor*, 914 F.3d 1010, 1015 (6th Cir. 2019). After all, if a case is moot, an Article III case or controversy does not exist and "we lack jurisdiction to proceed." *Ramsek v. Beshear*, 989 F.3d 494, 499 (6th Cir. 2021).

"A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation modified). Holly argues that the preliminary injunction issue is not moot because it falls under an exception that allows for judicial review where the challenged action is "capable of repetition yet evading review." CA6 R. 30, Reply Br., at 2-3 (citing *Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 221-22 (6th Cir. 1996)). "This exception applies when (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Aaron*, 914 F.3d at 1015 (citation modified). Holly bears the burden of demonstrating that the exception applies. *Id.*

Holly satisfies both prongs here. First, the challenged actions (the $250 fine and redacting Jesse's address from the federal case filings) were completed shortly after the district court denied the TRO and preliminary injunction based on *Younger* abstention and before our court could render a decision in this matter. Holly filed in federal court a "notice of compliance" with the domestic relations court's order on December 1, 2025, "request[ing] that Officer Hooven's address be redacted from the Record of this action." RE 111, Notice, PageID 1014. Jesse, believing this "request" to be inadequate, filed his own motion to seal the federal court records one day later. RE 112, Mot., PageID 1018. The district court issued an order sealing the records on December 3, 2025. Holly has also admitted that she has paid the $250 fine. Therefore, the challenged actions "had already been completed before [their] validity could be fully litigated on appeal in this court." *Aaron*, 914 F.3d at 1016.

And the "second prong is satisfied if the controversy is *capable* of repetition and not whether the claimant has demonstrated that a recurrence of the dispute is more probable than not." *Id.* (citation modified). Holly contends that the underlying state court custody order "remains in place" and, should she re-disclose Jesse's home address, she can "reasonably expect

to be held in contempt again." CA6 R. 30, Reply Br., at 2-3 (citation modified). We have found the second prong satisfied when "[t]he state litigation is ongoing, and the situation is certainly capable of repeating itself." *Aaron*, 914 F.3d at 1016. Those conditions exist here, so the preliminary injunction issue is not moot.[2]

B.      *Younger* abstention

Typically, "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). However, courts of appeals also have jurisdiction over certain interlocutory orders, including orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). That is, "[a] district court's order granting or denying a preliminary injunction is immediately appealable pursuant to 28 U.S.C. § 1292(a)(1)." *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 745 (6th Cir. 2020) (order). Conversely, "we generally lack jurisdiction to hear an appeal of a district court's order granting or denying a TRO." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 360 (6th Cir. 2008).

Holly moved for a temporary restraining order *and* a preliminary injunction. The district court stated in its order that it would "abstain under *Younger* from issuing a TRO *or injunctive order* that would interfere with the pending domestic relations lawsuit" and that Holly's "Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 109) is DENIED." RE 110, Order, PageID 1010, 1013 (emphasis added). We thus have jurisdiction to consider Holly's appeal of the denial of injunctive relief.

1.      *NOPSI*

*Younger* abstention "derives from a desire to prevent federal courts from interfering with" certain functions of state courts "and to preserve equity and comity." *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir. 2017). The doctrine applies in three "exceptional" circumstances,

---

[2]For the same reasons, we deny Jesse's pending motion to dismiss this appeal on mootness grounds.

outlined in *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) (*NOPSI*). "First, *Younger* preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[] abstention. Finally, federal courts refrain[] from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citing *NOPSI*, 491 U.S. at 368) (citation modified). Once a court determines that a case falls into one of these categories, it may then "appropriately consider[]" "three . . . additional factors" first laid out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). *Sprint*, 571 U.S. at 81 (citation modified). These factors include whether there is "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Id.* (citation modified). We review de novo the district court's order abstaining from hearing a case under the *Younger* doctrine. *Doe*, 860 F.3d at 368.

Here, Holly asked a federal court to stay a state-court contempt order. This falls comfortably within the third *NOPSI* category: pending civil proceedings involving orders uniquely in furtherance of state courts' ability to perform judicial functions. Indeed, state-court contempt proceedings are "prototypical examples of situations falling within [the] third category." *Aaron*, 914 F.3d at 1016 (citing *Juidice v. Vail*, 430 U.S. 327 (1977)). To illustrate, in *Juidice*, state court judges held individuals in contempt of court when the individuals refused to comply with subpoenas to appear in supplemental proceedings brought by their judgment creditors. 430 U.S. at 328-30, 332. The individuals sued in federal court, seeking injunctive and declaratory relief against the state's contempt proceedings. *Id.* at 331, 339 n.16. In determining that *Younger* abstention applied, the Court emphasized that the state had an interest in state court contempt proceedings: "A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system . . . is surely an important interest" because "[t]he contempt power lies at the core of the administration of a State's judicial system." *Id.* at 335. The Court further observed that "interference with the contempt process not only unduly interferes with the legitimate activities of the State, but also can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Id.* at 336 (citation modified).

Holly argues that this case does not fall into the third *NOPSI* category because the state domestic relations court's contempt order "did not involve a domestic relations question. . . . Rather, [the order] makes clear that the State Court meant to punish noncompliance." CA6 R. 25, Appellant Br., at 21-22 (citation modified). Putting aside the fact that the contempt order *did* involve the violation of an underlying child custody agreement, the key question is whether the contempt order was uniquely in furtherance of the state court's ability to perform its judicial functions. Under *Juidice*, it was. We readily conclude that the state court contempt order falls within the third *NOPSI* category. *See also Doe*, 860 F.3d at 369 (noting that the third *NOPSI* category of state-court civil proceedings encompasses contempt orders).

### 2. *Middlesex*

Having satisfied ourselves that this case falls into a *NOPSI* category in which *Younger* abstention "may be proper," we turn now to the three *Middlesex* factors. *Aaron*, 914 F.3d at 1018; *see also Doe*, 860 F.3d at 369.[3] First, does this case qualify as an ongoing state judicial proceeding? As the district court correctly noted, at the time it abstained from the issue of injunctive relief, Holly's case was pending in the Ohio Court of Appeals. Although Holly has since voluntarily terminated that appeal, the state domestic relations court case in which the contempt order was entered remains open. Thus, there was and is an ongoing state judicial proceeding.

Holly makes two arguments as to the first *Middlesex* factor, but neither is persuasive. First, she argues that the state court action is not "pending," but rather terminated upon the entry of the domestic relations court's contempt order, and that the only things "that remain[] . . . [are] issues incidental to enforcement." CA6 R. 25, Appellant Br., at 23-24. This is incorrect. As noted above, there was an appeal of the contempt order pending at the time the district court abstained. As the Court explained in *NOPSI*, "For *Younger* purposes, the State's

---

[3]Holly appears to argue that any authority predating *Sprint* that applied the three *Middlesex* factors is no longer good law because *Sprint* changed the *Younger* abstention analysis. But *Sprint* simply clarifies that the *Middlesex* factors standing alone are "not dispositive." 571 U.S. at 81. A court must first determine whether a case falls into one of the "three exceptional circumstances identified in *NOPSI*"; it may *then* consider the three *Middlesex* factors in determining if *Younger* abstention is warranted. *Id.* at 81-82 (citation modified). Our previous analyses of the three *Middlesex* factors are still good law; we simply cannot consider those factors alone without first making the *NOPSI* determination.

trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign." 491 U.S. at 369. Here, the state domestic relations court matter remains open, and any number of matters concerning the Hoovens' divorce or the custody of their children (like the recently filed parenting-time motion) could still be litigated. *See, e.g.*, *Shafizadeh v. Bowles*, 476 F. App'x 71, 72-73 (6th Cir. 2012) (where judgment had been entered in state divorce case, but federal court litigant sought injunction requiring state court judge to recuse himself in "further proceedings," state judicial proceeding was still pending at the time federal complaint filed and *Younger* abstention was appropriate); *Kelm v. Hyatt*, 44 F.3d 415, 417-19 (6th Cir. 1995) (where federal complaint requesting injunctive relief and challenging constitutionality of two Ohio domestic-relations rules was filed while parties' divorce was still open in Ohio domestic relations court, "underlying divorce case was pending at the time" federal action filed for *Younger* purposes).

Second, Holly cites *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003), for the proposition that "when determining whether state court proceedings involving the plaintiffs are pending, we look to see if the state court proceeding was pending at the time the federal complaint was filed." She argues that although her federal case was initiated on April 14, 2024, "nothing in the [r]ecord" shows when the "the state court proceeding began." CA6 R. 30, Reply Br., at 11-12. Holly is wrong about this, too. The publicly available docket shows that her domestic relations court case was initiated in 2018. Holly argues that the state court "controversy at issue" could not have begun until Jesse filed his contempt motion on July 17, 2025, but she cites no authority demonstrating that this is the correct framing for the timing analysis. *Id.* at 12. In any event, Jesse's motion alleged a violation of the underlying child custody *order*, which had been in place well before Holly initiated federal court litigation in April 2024.

With respect to the second *Middlesex* factor, Ohio has an interest in enforcing its state contempt proceedings as part of the administration of its judicial system. *Juidice*, 430 U.S. at 335-36. And we have held that a domestic relations question involves an important state interest for *Younger* purposes. *Kelm*, 44 F.3d at 420; *see also Meyers v. Franklin Cnty. Ct. of*

*Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001) (noting that "abstention is generally appropriate in matters of family relations such as child custody"). Holly's arguments to the contrary are rooted in a separate doctrine, the domestic-relations exception to federal jurisdiction, which is different from *Younger* abstention. *See, e.g.*, *Alexander v. Rosen*, 804 F.3d 1203, 1205-07 (6th Cir. 2015) (analyzing the domestic-relations exception and *Younger* abstention as two separate doctrines); *see also Johnson v. Collins*, No. 15-5862, 2025 U.S. App. LEXIS 24208, at *3 (6th Cir. Feb. 2, 2025) (order) (same). As the district court decided Holly's motion under only *Younger* abstention and not the domestic-relations exception, Holly's arguments are inapposite.

The final *Middlesex* factor is whether Holly had an adequate opportunity to raise her constitutional claims in the state court proceedings. 457 U.S. at 432. The plaintiff bears the burden of establishing the inadequacy of the state court. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987). *Kelm* is instructive on this front. In that case, the plaintiff sought injunctive relief in federal court, alleging that Ohio domestic relations statutes were unconstitutional and that Ohio courts could not be an adequate venue for litigating that claim. 44 F.3d at 418, 420. But the plaintiff had an "underlying divorce case . . . pending at the time he filed his federal action." *Id.* at 419. In rejecting his argument, we noted that "we must presume that the state courts are able to protect the interests of the federal plaintiff." *Id.* We then observed that Ohio has an "open courts provision" in Article 1, § 16 of its constitution, as was the case in *Pennzoil*, and the Ohio courts had "given us no reason to question their ability or willingness to address Kelm's constitutional questions." *Id.* at 420. Therefore, the third *Middlesex* factor was satisfied. *Id.* at 421; *accord Meyers*, 23 F. App'x at 205. We reach the same conclusion here. We also note that Ohio courts are well-equipped to adjudicate claims, like Holly's, that contempt orders arising out of child custody cases violate the First Amendment. *See, e.g.*, *Linn v. Utt*, No. 2023 CA 0034, 2024 WL 3825193 (Ohio Ct. App. Aug. 14, 2024).[4]

---

[4]Holly argues that an Ohio domestic relations court cannot adjudicate claims arising under Section 1983 or *Monell*. But she asserted these types of claims in her federal *complaint*. Her motion for injunctive relief did not concern these types of claims; rather, it asserted that the domestic relations court's contempt order "violate[d] [her] absolute First Amendment right to seek redress in federal court *for* her claims arising under 42 U.S.C. § 1983" because the order was a "prior restraint." RE 109, Mot. for TRO and Prelim. Inj., PageID 992, 996-1001 (emphasis added).

The fact that Holly withdrew her state-court appeal—after receiving the district court's order abstaining from the injunction issue and after filing an appeal of that decision with this court—does not change our analysis. The Supreme Court observed in *Juidice* that because "th[e] appellees had an *opportunity* to present their federal claims in the state proceedings[,] [n]o more [was] required to invoke *Younger* abstention." 430 U.S. at 337. The appellees' "failure to avail themselves of such opportunities [did] not mean that the state procedures were inadequate." *Id.* And the Court later remarked, in *NOPSI*, that "a party may not procure federal intervention by terminating the state judicial process prematurely—forgoing the state appeal to attack the trial court's judgment in federal court." 491 U.S. at 369; *see also id.* ("A necessary concomitant of *Younger* is that a party wishing to contest in federal court the judgment of a state judicial tribunal must exhaust his state appellate remedies before seeking relief in the District Court." (citation modified)). Here, Holly could have had the Ohio Court of Appeals pass upon the constitutionality of the contempt order, but she chose not to. In any event, she has not met her burden to prove the inadequacy of the Ohio state courts.

3. Exceptions to *Younger* abstention

Although the *Middlesex* factors are met in this case, "[t]here are several circumstances under which, although *Younger* abstention would normally be appropriate, the federal court should *not* abstain from hearing a case." *Aaron*, 914 F.3d at 1019. There are three such exceptions: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue*, 420 U.S. 592, 611 (1975); (2) "the challenged statute is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S. 415, 424 (1979) (citation modified); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). These exceptions have been interpreted narrowly. *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986).

Holly argues that "the [s]tate [c]ourt [o]rder is flagrantly unconstitutional because it violates the Supremacy Clause" and the First Amendment. CA6 R. 25, Appellant Br., at 15; *see also id.* at 26-33. But she has not shown that the domestic relations court order is flagrantly unconstitutional. This exception is "even more narrow that the bad faith or harassment exception; the Supreme Court has *never* found it to be applicable since it first announced the

exception in *Younger*." *Zalman*, 802 F.2d at 205 (emphasis added). "*Younger* itself illustrates the narrowness of" this exception, because the plaintiff in that case could not even "bring himself within the exception even though the statute under which he was indicted had been effectively invalidated." *Id.* at 206.

Holly's cited authority on this point is unavailing. To the extent she relies on the Ninth Circuit's decision in *Courthouse News Service v. Planet* for the proposition that "the *Younger* abstention doctrine does not apply because the case 'presents an important First Amendment question . . . that should be decided by the federal courts,'" *see* CA6 R. 25, Appellant Br. at 31-32, that case concerned abstention under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and *O'Shea v. Littleton*, 414 U.S. 488 (1974), not *Younger*. *See Courthouse News Serv.*, 750 F.3d 776, 779 (9th Cir. 2014). Likewise, Holly cites our decision in *Jones v. Coleman*, 848 F.3d 744, 750 (6th Cir. 2017), for the proposition that "federal courts should be particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." CA6 R. 25, Appellant Br., at 32 (citation modified.) But that case, too, concerned *Pullman* abstention. *Jones*, 848 F.3d at 750. Our decision in *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016), is also no help to Holly, because that case neither conducted a *Younger* abstention analysis nor analyzed the "flagrantly unconstitutional" exception.

The only case on point that Holly cites, *Doe*, explains that the exception "is a high bar" and declined to apply it. 860 F.3d at 371. We likewise decline to find that the state court contempt order is flagrantly unconstitutional such that we should not apply *Younger* abstention. In sum, the district court did not err in declining to involve itself in a pending state proceeding.

C.     *Rooker-Feldman*

Both Jesse and the City argue that the *Rooker-Feldman* doctrine precludes our review of the injunction issue because Holly "attempt[ed] to obtain federal court review of [a] state court order[] after [she] resolved the contempt proceedings." CA6 R. 27, J. Hooven Br., at 18-19; *see also* CA6 R. 21, City of Cincinnati Br., at 12-14. The *Rooker-Feldman* doctrine bars federal courts' jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments," regardless of whether such judgments have been rendered by the highest court of the State. *T. M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ---, 146 S. Ct. 1739, 1744 (2026) (citation modified). But "[b]ecause we decide this issue on the grounds of *Younger* abstention, we do not reach the question of the applicability of the *Rooker-Feldman* doctrine." *Ken-N.K., Inc. v. Vernon Township*, 18 F. App'x 319, 325 (6th Cir. 2001); *accord Stewart v. Brown*, No. 23-3690, 2024 WL 3551151, at *2 (6th Cir. Apr. 4, 2024) (order) ("Because the district court properly abstained from hearing the case under *Younger*, we need not address the dismissal based on *Rooker-Feldman*.").

D.     *Monell* claim

Finally, Holly purports to appeal the district court's decision to dismiss her *Monell* claim against the City.[5] In its September 30, 2025 corrected order on Holly and Taylor's motions for reconsideration, the district court reiterated that the *Monell* claims against the City were dismissed and declined to certify the dismissal order as "final." RE 103, Corrected Order, PageID 927 n.1, 938-40.

We have jurisdiction under 28 U.S.C. § 1291 to review only "final decisions" of district courts. Pursuant to Section 1291, "[a] decision is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Bd. of Trs. of Plumbers, Pipe Fitters & Mech. Equip. Serv., Loc. Union No. 392 v. Humbert*, 884 F.3d 624, 625 (6th Cir. 2018) (citation modified). "[T]he denial of a municipal-liability claim is *not* immediately appealable" as a "final decision" under 28 U.S.C. § 1291. *Courtright v. City of Battle Creek*, 839 F.3d 513, 523 (6th Cir. 2016) (citation modified); *accord Lane v. City of LaFollette*, 490 F.3d 410, 423 (6th Cir. 2007).

Although Holly admits that the district court's order on injunctive relief did not terminate the "litigation as a whole on the merits," she nevertheless argues that the district court's order denying her motion for injunctive relief on the basis of *Younger* abstention qualified as a final order, into which its previous order dismissing her *Monell* claims merged. CA6 R. 25, Appellant Br., at 5, 7; CA6 R. 30, Reply Br., at 19-20. Although it is accurate that orders of abstention

---

[5]The district court also dismissed Taylor's *Monell* claim, but only Holly filed a notice of appeal.

from hearing an *entire case* are typically final judgments, *see Jones*, 848 F.3d at 748, that is not the case where the plaintiff has asserted claims other than the issue from which the district court abstains and where the plaintiff is not "effectively out of court" on those other claims. *See Clark v. Adams*, 300 F. App'x 344, 349-50 (6th Cir. 2008) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983)); *cf. RSM Richter, Inc v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) (finding jurisdiction over an abstention order where the order stayed the case, "put the litigants effectively out of court, and [was] the practical equivalent of an order dismissing the case" (citation modified)). Here, there is no claim in Holly's amended complaint that the state contempt order was an unconstitutional prior restraint, as she argued in her motion for injunctive relief. So the district court could not (and did not) stay any claim in Holly's underlying federal lawsuit when it abstained from ruling on that motion. Put another way, the district court's decision to abstain from deciding the motion for injunctive relief did not put Holly effectively out of court regarding her remaining Section 1983 and *Monell* claims. Indeed, the underlying claims are currently in discovery.

Because a final order has not been entered on the claims asserted in Holly's complaint, there was nothing into which "previous nonfinal orders," like the order dismissing the *Monell* claims, could have merged. CA6 R. 30, Reply Br., at 20 (citation modified). Holly cannot yet appeal the dismissal of her *Monell* claim against the City. *See Anderson-Santos v. Kent County*, 94 F.4th 550, 553 n.3 (6th Cir. 2024).

Nor does Rule 54(b) provide an avenue for Holly's appeal of the *Monell* claim. Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved," as is the case here, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if the court "determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). If it does not, however, any order it enters "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action." *Id.*; *see also* 28 U.S.C. § 1292(b) (a district court may "state in writing" that "an immediate appeal" of an otherwise unappealable order may advance the litigation). Had Holly obtained certification for an interlocutory appeal under Rule 54(b) or Section 1292(b), she could have appealed the dismissal of her *Monell* claim against the City. *William B. Tanner Co.*

*v. United States*, 575 F.2d 101, 102 (6th Cir. 1978) (per curiam).  But the district court explicitly declined to certify its September 30, 2025 dismissal order as "final" pursuant to Rule 54(b).

We conclude that the order dismissing Holly's *Monell* claim against the City is not final, so we have no jurisdiction to consider that issue on appeal.

### III.

For the foregoing reasons, we affirm the district court's order abstaining from the injunctive-relief issue under *Younger* and dismiss for lack of jurisdiction Holly's appeal of the district court's dismissal of her *Monell* claim against the City.